UNITED STATES of America, Plaintiff–Appellee,

v.

Vernon Dale SPIVEY, Danny H. Spivey, and Michael Gorder, Defendants–Appellants.

No. 87–2857, 87–2920.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1988.

Decided Sept. 28, 1988.

As Amended Oct. 5, 1988.

Adam Bourgeois, Bourgeois & Null, Ronald Clark, Chicago, Ill., for defendants-appellants.

Barbara F. Lazarus, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., and KANNE, Circuit Judges, and REYNOLDS, Senior District Judge.*

REYNOLDS, Senior District Judge.

In December, 1985, Richard Bowers was employed as a truck driver for Illini Express and had been assigned to transport a semi-trailer load of beef from Dakota City, Nebraska to Monroeville, Pennsylvania and Louisville, Kentucky. Bowers drove as far as Chicago where he and others decided to steal and sell the meat rather than deliver it. The meat was unloaded from the trailer and the trailer was abandoned. Bowers was later found and agreed to cooperate with the FBI's investigation of the theft. Bowers and seven other defendants were subsequently indicted and charged with conspiracy and theft of an interstate shipment. Five of the defendants, Bowers, Tony Gorder, Richard Grant, Michael Schwabe, and Donald Johnson, entered guilty pleas, while defendants Michael Gorder ("Gorder"), Vernon Dale Spivey and Danny H. Spivey ("the Spiveys") proceeded to trial.

On September 16, 1987, a jury convicted Gorder and the Spiveys of conspiracy to possess and actual possession of goods stolen from an interstate shipment in violation of 18 U.S.C. §§ 371 and 659. Gorder appeals his conviction arguing that the evidence was insufficient to find Gorder guilty beyond a reasonable doubt. The Spiveys appeal their convictions arguing that it was error for the trial court to admit on redirect examination the guilty plea and plea agreement of Richard Bowers, a co-defendant and co-conspirator, and that the prosecutors made improper and prejudicial closing arguments. We find no error and affirm the defendants' convictions.

I

■ Gorder argues that the evidence presented at trial was insufficient to find him guilty beyond a reasonable doubt. Gorder did not take the stand and offered no witnesses in his defense. During the government's case in chief, the co-defend-ants who entered guilty pleas testified pursuant to cooperation clauses in their respective plea agreements.

Richard Bowers testified that Gorder was present at two meetings on December 31, 1984, where the meat transaction was discussed. Bowers also testified that, on the next night, Gorder helped unload boxes of meat from the trailer into pickup trucks and then into Danny Spivey's garage. Michael Schwabe, Don Johnson, Gorder's brother Tony and the Spiveys also testified that Gorder assisted in loading and unloading the meat.

Several defendants testified about Gorder's presence at other events during the planning and carrying out of the meat theft. Michael Schwabe testified that Bowers consigned eight to ten boxes of meat to Gorder's brother Tony and that Gorder accompanied Schwabe and Tony as they attempted to sell the meat. Tony testified that Gorder introduced Vernon Dale Spivey to Tony as an individual interested in purchasing Bowers' entire load of meat. Finally, Don Johnson testified that he, Vernon Dale Spivey and Gorder were returning to Bowers' trailer after unloading meat at Danny Spivey's garage when they spotted police in the vicinity of the trailer. Johnson and Gorder fled and eventually met up with the others at a local restaurant.

In determining whether the evidence presented was sufficient to find Gorder guilty beyond a reasonable doubt, this court must decide whether "any rational trier of fact, taking the evidence and all legitimate inferences in the prosecution's favor, could have thought the facts sufficient to show guilt beyond a reasonable doubt." *United States v. Sblendorio,* 830 F.2d 1382, 1386 (7th Cir.1987). Gorder argues that, at best, the evidence shows that Gorder was nothing more than a knowing spectator.

Gorder contends that he is like the defendant in *United States v. Baker,* 499 F.2d 845, 849 (7th Cir.1974), where we held

---

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

that the evidence was insufficient to infer that the defendant had intended to participate in a conspiracy to distribute controlled substances or knew of the conspiracy and associated himself with it. This contention is without merit. In *Baker*, the only act committed by the defendant was that of driving a car in which a co-conspirator and another individual rode. Although Gorder may not have been as involved in the planning of the meat theft or have profited as much as his co-conspirators, his actions were certainly greater than those of the defendant in *Baker*, and were sufficient to show that Gorder was a knowing participant in the conspiracy.

The evidence showed that Gorder assisted in unloading and loading the meat, and that Gorder fled when police were spotted near the trailer. The evidence also showed that Gorder introduced Vernon Dale Spivey to his brother Tony as a potential buyer of the whole load of meat, and accompanied Tony and Michael Schwabe as they drove around town selling the meat. Thus, the evidence clearly indicated that Gorder was more than a knowing spectator. Gorder actually participated in and helped to further the conspiracy. When viewed in the light most favorable to the government, the evidence is sufficient to find Gorder guilty beyond a reasonable doubt.

## II

The Spiveys raise two issues on appeal. First, the Spiveys argue that it was error for the district court to admit testimony on the government's redirect examination of Richard Bowers regarding Bowers' guilty plea and plea agreement. Prior to trial, the Spiveys filed a motion in limine seeking to exclude any evidence of the guilty pleas and plea agreements entered by the co-conspirators testifying on the government's behalf. The government often seeks to introduce evidence of guilty pleas and plea agreements on direct examination in an effort to soften the sting of cross-examination and avoid the impression that the government is hiding something. The government opposed the motion arguing that the jury might conclude that some of the co-conspirators had escaped prosecution.

In response to the government's concern, the judge proposed reading the indictment to the jury and instructing them that the other defendants were not before the jury one way or another. This resolution was acceptable to the government, and the trial judge granted the Spiveys' motion. The judge ruled that, during the direct examination of the co-conspirators, the government was precluded from introducing any evidence of the plea agreements and guilty pleas of the co-conspirators. The judge also ruled that the government could not refer to the plea agreements and guilty pleas during any arguments to the jury.

In compliance with the court's ruling, the government did not introduce any evidence of the guilty plea or plea agreement of Richard Bowers during the government's direct examination of Bowers. Bowers was the government's key witness and, on cross-examination, counsel for the Spiveys focused primarily on prior inconsistent statements Bowers had given to the FBI and the fact that Bowers had lied under oath before the Grand Jury. On redirect examination, the government moved the court for permission to introduce evidence of Bowers' guilty plea and plea agreement. The government argued that counsel for the Spiveys had put Bowers' credibility in issue and that evidence of Bowers' guilty plea and plea agreement was necessary to explain why the jury should believe that Bowers' trial testimony was truthful.

The court ruled in the government's favor and permitted evidence of Bowers' guilty plea and plea agreement to be introduced on redirect examination. The court stated that the government was entitled to explain the inconsistencies, and that the evidence was being offered to explain the inconsistent statements and not to impeach the witness. The court reasoned that the cross-examination of Bowers had opened the door for the admission of this evidence.

On appeal, the Spiveys argue that it was error for the court to admit the evidence on redirect examination. The Spiveys contend that the government waived any right to

use the guilty plea and plea agreement to repair Bowers' credibility when the government failed to raise this concern during the argument on the motion in limine. The Spiveys contend that the government acquiesced in the motion to exclude the plea material and should not have been permitted to seek reconsideration of the court's ruling. We disagree.

 At the outset, we note that evidence of a witness' guilty plea and plea agreement is admissible. *United States v. McGrath*, 811 F.2d 1022 (7th Cir.1987), *United States v. LeFevour*, 798 F.2d 977 (7th Cir.1986). Moreover, the district court's ruling precluded the government from introducing the plea materials during direct examination. Thus, by its own terms, the court's ruling left open for consideration admission of the plea materials on redirect examination.

The defense opened up the issue of Bowers' credibility on cross-examination. It was not an abuse of the trial court's discretion to permit the government to address the issue on redirect examination. The government offered evidence of the guilty plea and plea agreement to explain to the jury that Bowers' inconsistent statements were made prior to the plea agreement and to enable the jury to judge Bowers' credibility with a complete record. The government did not improperly emphasize Bowers' plea in closing argument, and the court instructed the jury that the guilty plea and plea agreement should not affect the jury's consideration of the guilt or innocence of the defendants on trial. The district court committed no error in admitting evidence of Bowers' guilty plea and plea agreement on redirect examination.

### III

The Spiveys also contend that the government repeatedly made improper and inflammatory closing arguments which deprived the Spiveys of a fair trial. Specifically, the Spiveys object to the government's 1) characterization of Dale Spivey's creation of a trust account for himself as a dishonest act, 2) description of the Spiveys as con men, 3) labeling a portion of Danny Spivey's testimony as a lie, and 4) "vouching" for the credibility of government witnesses Michael Schwabe and Richard Bowers.

At trial, the defense made specific objections to the government's arguments about the trust account and the government's description of the Spiveys as con men. With respect to these remarks, this court must determine whether they were so prejudicial as to deprive the defendants of a fair trial. *United States v. Fakhoury*, 819 F.2d 1415, 1422 (7th Cir.1987). Defense counsel failed to object to the government's comments concerning the credibility of Danny Spivey and government witnesses Richard Bowers and Michael Schwabe. Thus, the standard of review for these remarks is plain error. *Id.*

██ This court's review of a claim of prosecutorial misconduct follows a bifurcated analysis. First, this court examines the challenged remark in isolation to determine whether it was improper. If the court concludes that the remark was improper, the remark is evaluated in light of the entire record to determine whether it deprived the defendant of a fair trial. *United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.1987). In this case, none of the Spiveys' prosecutorial misconduct claims have merit.

The Spiveys objected to the government's characterization of Dale Spivey's creation of a trust account as a dishonest act. Prior to trial, the Spiveys made a motion in limine seeking to bar any mention of the trust account. The Spiveys argued that the establishment of the trust account was an innocent act which may take on a "sinister appearance" at trial because it was created at about the same time as the commission of the crime charged. The government opposed the motion arguing that because deposits into the trust account coincided with the dates the theft was committed, the account is circumstantial corroboration of Dale Spivey's participation in the theft. The government also stated that defense counsel was free to argue to the jury that the setting up of

the trust account was an innocent act. The court denied the defendants' motion in limine.

At trial, Brenda McKee testified that, in December, 1983, Dale Spivey gave her money to open a bank account for him in the name of "Miss Brenda McKee, Trustee for Dale Spivey." McKee testified that Dale Spivey told her he was opening the account because he thought he might be sued by a child who was injured by a tractor he was responsible for. Dale Spivey also testified at trial and confirmed McKee's testimony. During closing arguments, the government argued that the establishment of the trust account was not the act of an honest and truthful person, and questioned the character of a man who would do such a thing.

■ The government's argument was not improper. The government is free to draw any reasonable inference from the evidence adduced at trial and may also comment on the credibility of a witness, including the defendant. *United States v. Tucker*, 820 F.2d 234, 237 (7th Cir.1987), *United States v. Chaimson*, 760 F.2d 798, 811 (7th Cir.1985). The government's remarks regarding the trust account were nothing more than reasonable inferences about Dale Spivey's character and credibility based on the testimony of McKee and Dale Spivey himself. Moreover, the defense invited this argument when it called four witnesses to testify to Dale's honest and truthful reputation.

■ The Spiveys also objected to the government's characterization of the Spiveys as "con men." The Spiveys argue that this remark amounted to the prosecutor expressing his personal opinion on the merits of the case. The government's statement reveals the following reference to the Spiveys as con men:

> Ladies and gentlemen, what we are asking you to do, and all we are asking you to do, is to consider the evidence, the only proper thing for you to consider in this case, and when you consider the evidence, I think that you can only reach one conclusion, and that is that these men are con men, that they ply their trade of deceit and theft wherever they go, that they manipulate, they try to manipulate you, they manipulate family members, and they manipulate friends....

When examined in context, the prosecutor's remarks were not opinions on the merits of the case, but rather were reasonable inferences to be drawn from the evidence presented.

■ Finally, the Spiveys challenge the government's closing remarks calling a portion of Danny Spivey's testimony a lie and arguing that Schwabe's and Bowers' plea agreements provided them with a motive to tell the truth. These remarks were not objected to at trial and, thus, are subject to review for plain error. Neither remark warrants reversal of the defendants' convictions.

It is not impermissible for a prosecutor in closing argument to call the defendant a liar, provided that the term is not used to the point of excessiveness. *Chaimson*, 760 F.2d at 811. In the present case, the prosecutor's remarks were not excessive and were directed at Dale Spivey's credibility. They were not improper.

■ The government cannot make overt statements of personal belief regarding the credibility of the government's witnesses. *United States v. Machi*, 811 F.2d 991 (7th Cir.1987). In this case, the prosecutor merely pointed out that the cooperation clauses in Bowers' and Schwabe's plea agreements provided them with a motive to tell the truth. This statement is within the bounds of acceptable argument and does not amount to the government improperly vouching for the credibility of its witnesses.

For all of the foregoing reasons, the convictions of the defendants, Michael Gorder, Danny Spivey, and Vernon Dale Spivey are affirmed.