993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emery Harold HALL, a/k/a El, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Charles Jerome Adams, a/k/a Boo Boo, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Clarence Brown, Jr., a/k/a Clincher, Defendant-Appellant.
 Nos. 92-5428, 92-5482, 92-5483.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993
Decided: June 4, 1993
 
 Appeals from the United States District Court for the South Carolina, at Aiken. Charles E. Simons, Jr., Senior District Judge. (CR-91-291-1)
 Langdon Dwight Long, Assistant Federal Public Defender, Columbia, South Carolina; Karen N. Fryar, Columbia, South Carolina, for Appellants.
 William G. Yarborough, III, Assistant United States Attorney, Greenville, South Carolina, for Appellee.
 Charles R. Sheppard, Augusta, Georgia; Jack B. Swerling, Columbia, South Carolina, for Appellants. John S. Simmons, United States Attorney, Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED AND REMANDED.
 Before WILLIAMS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Appellants are three criminal defendants who contest a jury verdict finding them guilty of various narcotics and firearm offenses. Appellants raise a host of issues. Because we find no reversible error, we affirm the jury's verdict.
 
 
 2
 * Appellants were the targets of an extended investigation by state and federal authorities into an alleged drug and firearm conspiracy in Beech Island, South Carolina. Undercover government agents and cooperating co-conspirators provided evidence that each of the appellants was involved in the conspiracy, although they played different roles in the conspiracy's activities.
 
 
 3
 The evidence tended to show that appellant Charles Jerome Adams ("Adams") was the leader. He began to buy and sell drugs in the late 1970's, and his activities continued throughout the 1980's. He was convicted on state drug charges in 1985 and incarcerated from 19851987. However, he continued his involvement in narcotics trafficking after being released from prison.
 
 
 4
 A variety of witnesses testified about the involvement of appellants Emory Harold Hall ("Hall") and Clarence Brown, Jr. ("Brown") with Adams. One of the government informants, J.R. Rickenbacker ("Rickenbacker"), owned a used car dealership in Rock Hill, South Carolina. He allowed government agents to make audio and video recordings of a meeting between Rickenbacker, Hall, and Adams at the dealership on April 10, 1991. During the meeting, Hall presented cocaine to Rickenbacker and boasted about its high quality. Hall also stated that he asked Adams to bring a kilogram of cocaine to Rickenbacker but that Adams did not want to travel with it. Adams stated that he recently purchased fifteen kilograms of cocaine and that he would sell it for $29,000 per kilogram.
 
 
 5
 Rickenbacker also testified at trial that Brown was a member of the conspiracy with Adams and Hall. The evidence showed that Brown engaged in several transactions involving a kilogram or more of cocaine and that he continued to distribute narcotics while Adams was in state prison from 1985-1987. Several other witnesses at trial confirmed Brown's connections to Adams and Hall.
 
 
 6
 On May 21, 1991, Hall and Adams were arrested in Rock Hill, South Carolina while attempting to purchase fifty pounds of marijuana for $36,000. Cocaine and $36,000 in cash were found in a car driven by Hall at the time of the arrest. Pursuant to a warrant, federal agents also searched Adams' house in Graniteville, South Carolina and found six loaded firearms in various locations in the house. Brown was also arrested by government agents during this same period.
 
 
 7
 A grand jury returned a second superseding indictment against the appellants on October 16, 1991. The indictment charged them with thirteen counts of conspiring to distribute and possessing cocaine, "crack" cocaine, and marijuana. The indictment also alleged various firearm offenses. After a joint week-long trial, a jury found each of the appellants guilty on several counts. Adams was convicted of conspiracy, possession of cocaine, possession with intent to distribute and distribution of cocaine, possession with intent to distribute marijuana, and being a felon in possession of firearms. Brown was convicted of conspiracy, possession with intent to distribute cocaine and "crack" cocaine, unlawful possession of firearms, and possession of marijuana. Hall was convicted of conspiracy, possession of cocaine, possession with intent to distribute cocaine, and possession with intent to distribute marijuana.
 
 
 8
 Hall was sentenced to 131 months' imprisonment on May 19, 1992, and Brown and Adams were sentenced to life without parole on July 2, 1992.
 
 II
 
 9
 Hall argues on appeal that the evidence presented at trial and sentencing was clearly insufficient to link him to fifteen kilograms of cocaine. As a result, he contends that he must be resentenced, because his offense level was based in part on the fifteen kilogram figure. "When a defendant challenges the sufficiency of the evidence used to convict him, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990), cert. denied, 111 S. Ct. 2019 (1991) (citation omitted). Similarly, a district court's findings of fact at sentencing, such as the finding that Hall was responsible for fifteen kilograms, are overturned on appeal only if they are "clearly erroneous." 18 U.S.C. § 3742(e). "A district court's finding of quantity is not erroneous if it is based on evidence possessing sufficient indicia of reliability to support its probable accuracy." United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir. 1992).
 
 
 10
 We find that a rational trier of fact could have linked Hall to fifteen kilograms of cocaine. In addition, we conclude that the district court's finding at sentencing that Hall was responsible for fifteen kilograms was not clearly erroneous. The taped conversation between Hall, Adams, and Rickenbacker reliably demonstrated Hall's enthusiastic participation with Adams in the sale and transportation of large amounts of cocaine. Hall stated that he wanted Adams to bring a full kilogram, and Adams stated that he possessed fifteen kilograms. Given our deferential standards of review, we find that Hall was properly linked to fifteen kilograms of cocaine.
 
 
 11
 Hall also argues that the district court imposed an illegal sentence on count eight of the indictment, which charged him with possession of cocaine with intent to distribute. The jury convicted Hall on the lesser included offense of simple possession, which carries a maximum term of one year in prison for persons such as Hall who have no prior simple possession convictions. However, the district court sentenced Hall to ten years on this count. As a result, Hall argues that he must be resentenced.
 
 
 12
 We agree that the district court erred in imposing the ten-year sentence, but on remand the district court need only correct the sentence on count eight. Hall was also convicted on counts one, two, six, and nine of the indictment. At sentencing the court imposed a concurrent ten-year prison term for counts one, two, six and eight and a concurrent five-year sentence on count nine. We affirm the sentences on counts one, two, six, and nine. Although the court erred by sentencing Hall to ten years on count eight, the error had no effect on the length of Hall's imprisonment. We still must remand, however, for the district court to correct Hall's sentence on count 8 of the indictment.
 
 
 13
 The next argument on appeal is submitted by Adams. He contends that the district court committed reversible error when it qualified Kent Paulin, an agent with the Federal Bureau of Investigation ("FBI"), as an expert witness. Paulin testified as an expert in the interpretation of records of drug transactions. He examined abbreviations, initials, and other entries in a 1984 calendar seized from Adams' home. According to Paulin, the calendar was a record of Adams' drug activities during the year. Adams contends that the government made no showing that Paulin had any specialized knowledge or expertise in the interpretation of alleged drug records.
 
 
 14
 "The trial court has broad discretion to determine whether to admit expert testimony ... and will not be reversed absent a clear abuse of discretion." United States v. Barsanti, 943 F.2d 428, 432 (4th Cir. 1991), cert. denied, 112 S. Ct. 1474 (1992). We have examined Paulin's qualifications, and we find that the district court did not abuse its discretion by qualifying him as an expert. The record demonstrates that Paulin worked in the racketeering records analysis unit of the FBI lab in Washington, D.C. His job was to examine suspected drug records and to determine the nature and extent of the narcotics activities described by the records. He was a Certified Public Accountant with a degree in criminal justice, and he was trained by the FBI for one year specifically in the area of records analysis. He stated that his FBI training involved "hundreds and hundreds of documents" and that FBI analyses of drug records have often been confirmed by the persons who made the records. He testified in federal court at least five times prior to appellants' trial. We find no error in the district court's ruling that Paulin was an expert witness.
 
 
 15
 Adams also contends that the district court erred by refusing to grant his motion for a directed verdict on count ten of the indictment. Count ten charged Adams with being a felon in possession of firearms. The charge was based on a 1987 state felony conviction and on the discovery of six loaded weapons during a search of Adams' house in Graniteville, South Carolina after he was arrested in 1991. Adams was not present at the house when it was searched, and he argues that the government failed to introduce sufficient evidence that he resided at the house. As a result, he contends that the guns seized from the house cannot serve as the basis for finding him guilty of being a felon in possession of firearms.
 
 
 16
 The government responds that the jury properly found Adams to be in constructive possession of the firearms. "The denial of [Adams'] motion[ ] for directed verdict cannot be disturbed unless, without weighing the evidence or assessing witness credibility, we conclude that reasonable people could have returned a verdict only for [Adams]." Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir. 1987).
 
 
 17
 "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item.... '[I]t need not be exclusive, but may be shared with others, and is susceptible of proof by circumstantial as well as direct evidence.' " United States v. Laughman, 618 F.2d 1067, 1076 (4th Cir.), cert. denied, 447 U.S. 925 (1980); cited in United States v. Rusher, 966 F.2d 868, 878 (4th Cir.), cert. denied, 113 S. Ct. 351 (1992). The government presented the testimony of several confidential informants who linked Adams to the Graniteville house. The informants stated that they purchased cocaine from Adams at the house or knew that Adams resided in the house. Based on the combined weight of this evidence, we find that a reasonable person could conclude that Adams was in constructive possession of the weapons seized at the Graniteville house. Accordingly, we find that the district court did not err when it denied Adams' motion for a directed verdict on count ten of the indictment.
 
 
 18
 Appellants' next argument is that the district court erred by refusing to grant their motion for a judgment of acquittal on the jury's verdict that the appellants engaged in a single conspiracy from 19791991. According to the appellants, the government's evidence established only that Adams, Brown, and a government informant, Landus Ross, were involved in a 1984 "base house" conspiracy to distribute narcotics. Alternatively, the appellants argue that the evidence establishes only that Brown, Adams, and Hall conspired together from 1979-1985. Appellants contend that the conspiracy ended with Adams' arrest in 1985 on state drug charges and that the government failed to present sufficient evidence linking Adams to the alleged conspiracy after his release from state prison in 1987.
 
 
 19
 "On appeal, this court must determine whether the evidence, when viewed in the light most favorable to the government ..., supports the jury's finding of a single conspiracy." United States v. Barsanti, 943 F.2d 428, 438 (4th Cir. 1991), cert. denied, 112 S. Ct. 1474 (1992). Viewed in this light, we find that the record contains ample evidence of ongoing narcotics activity by the appellants before and after 1984; therefore, we reject the argument that the evidence proved only a 1984 "base house" conspiracy.
 
 
 20
 In addition, we find that the record viewed in the light most favorable to the government shows a single conspiracy from 1979-1991. "Conspiracy is an ongoing crime, and 'once a criminal conspiracy is established, it is presumed to continue until its termination is affirmatively shown.' " United States v. Sheffer, 896 F.2d 842, 844 (4th Cir.), cert. denied, 498 U.S. 968 (1990) (citation omitted). Other than Adams' 1985 arrest and subsequent incarceration, the appellants have failed to present any affirmative evidence demonstrating that the conspiracy ended in 1985. Moreover, the mere fact of Adams' arrest and incarceration is insufficient to show that the conspiracy ended in 1985. See United States v. Grubb, 527 F.2d 1107, 1109 (4th Cir. 1975) ("Arrest of some co-conspirators does not, as a matter of law, terminate a conspiracy.").
 
 
 21
 Evidence at trial showed that Adams purchased narcotics as early as 1979. The evidence also demonstrated that Brown sold drugs while Adams was in prison and that Adams and Brown engaged in multiple kilogram transactions of cocaine after Adams' release from prison in 1987. Hall was present with Adams on the 1991 video and audio tapes. We find that the combined weight of this evidence, viewed in the light most favorable to the government, supports the jury's verdict that the appellants engaged in a single conspiracy from 1979-1991. Accordingly, the appellants' argument to the contrary must be rejected.
 
 
 22
 Brown also asserts that the district court erred when it refused to allow him to refer to Adams' 1985-1987 incarceration before the jury. Brown sought to introduce evidence of the incarceration to buttress his claim that the conspiracy ended in 1985. Adams did not object to the admission of the evidence, but the district court found that its prejudicial effect on Adams outweighed its probative value to Brown. Accordingly, the evidence was excluded under Federal Rule of Evidence 403.
 
 
 23
 We reverse a district court's decision under Rule 403 only for abuse of discretion, which occurs only in "the most extraordinary of circumstances," where the district court "acted 'arbitrarily' or 'irrationally.' " United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990) (citations omitted). We find that the district court in the present case did not act arbitrarily or irrationally when it excluded evidence of Adams' 1985-1987 incarceration. The court rationally concluded that allowing the jury to hear the evidence would have an undue prejudicial effect on Adams, because the jury may have been tempted to infer Adams' guilt based merely on his prior conviction and incarceration. We find no error in the district court's ruling.
 
 
 24
 Based on the language of his brief, Brown may also be alleging that the district court erred when it refused to grant Brown's motion for a severance of trial from Adams after the court ruled that Brown could not introduce evidence of Adams' incarceration. To the extent Brown is raising this argument, we find it to be without merit. "The grant of a severance ... is a matter within the discretion of the district court and the denial of a severance will be reversed only for clear error." United States v. Mitchell, 733 F.2d 327, 331 (4th Cir.), cert. denied, 469 U.S. 1039 (1984). We find no such error.
 
 
 25
 Appellants also contend that the district court improperly rejected Brown's proferred jury instruction regarding the five-year statute of limitations for a conspiracy charge under 18 U.S.C.s 3282. According to the appellants, the lack of this instruction caused the jury to be unaware that the defendants should be found not guilty if they did not commit acts in furtherance of the alleged conspiracy during the five years preceding the date of the indictment. On appeal, a district court's decision not to use proferred jury instructions is reversed only for abuse of discretion. Trimed, Inc. v. Sherwood Medical, 977 F.2d 885, 888, 890 (4th Cir. 1992).
 
 
 26
 We find that the district court did not abuse its discretion by refusing to use Brown's suggested jury instruction. The court properly instructed the jury that the indictment charged the appellants with a single conspiracy from 1979-1991. Because of this instruction, the jury was unable to find the appellants guilty of the conspiracy unless the jury also found that the appellants committed acts in furtherance of the conspiracy between 1985 and 1991. As a result, the jury instructions correctly described the relevant time frame, and the district court did not abuse its discretion by rejecting Brown's instruction on the statute of limitations.
 
 
 27
 The final argument raised by counsel on appeal is that Brown was improperly sentenced to life in prison. The argument has two parts. The first is that Brown's sentence was not based on the preponderance of the evidence presented at trial. Because of our conclusion above that the jury did not err when it found beyond a reasonable doubt that Brown was involved in a 1979-1991 narcotics and firearms conspiracy, we find that the first part of his argument must be rejected. The second part of Brown's argument is that the district court erred when it increased his offense level at sentencing after finding that he was an "organizer or leader of criminal activity" under § 3B1.1(a) of the Sentencing Guidelines.
 
 
 28
 "The adjustments in the offense level under § 3B1.1(a) for the defendant's role in the offense are factual determinations and the district court's findings on this issue are reviewed under a clearly erroneous standard." United States v. Richardson, 939 F.2d 135, 138 (4th Cir. 1991), cert. denied, 112 S. Ct. 942 (1992). Evidence presented at trial indicated that Brown continued to deal in multiple kilograms of cocaine while Adams was in prison and that Brown played a major role in the conspiracy with Adams and Hall. Viewing the record as a whole, we are convinced that the district court did not abuse its discretion by finding Brown to be an organizer or leader of the conspiracy proven at trial.
 
 
 29
 Two additional arguments are made in pro se supplemental briefs submitted by Adams and Brown. The first is that the jury which convicted the appellants consisted of only eleven people, in violation of the right to a twelve-person jury under Federal Rule of Criminal Procedure 23(b). We find that this argument must be rejected, because after being questioned at oral argument, counsel for the appellants admitted that the jury consisted of twelve persons. The second pro se argument is advanced exclusively by Brown. He contends that a prior conviction he received for housebreaking and larceny was improperly calculated under the criminal history section of his Presentence Report. However, we have reviewed the Presentence Report and find its calculations to be proper under §§ 4A1.1(b), 4A1.2(b)(2), and 4A1.3 of the Sentencing Guidelines.
 
 III
 
 30
 Except for Hall's sentence on count 8, we find no reversible error in the appellants' convictions and sentencings, and we affirm the jury's verdict. As to Hall's sentence on count 8 of the indictment, we remand this to the district court for resentencing.
 
 AFFIRMED AND REMANDED WITH DIRECTIONS