Sebastian RODRIGUEZ, Petitioner–Appellant,

v.

Anthony M. SCILLIA, Warden, Respondent–Appellee.

No. 98–2395.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1999.

Decided Oct. 13, 1999.

Rene Hernandez (argued), Belvidere, IL, for Petitioner–Appellant.

Domenica Osterberger (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before BAUER, WOOD, JR., and RIPPLE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Petitioner Sebastian Rodriguez appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court dismissed the case and refused to issue a certificate of appealability. This court granted a certificate of appealability only on the issue of prosecutorial misconduct. We affirm the district court's dismissal of Rodriguez's habeas corpus petition.

## I. BACKGROUND

Rodriguez was charged with and found guilty by a jury of one count of residential burglary and one count of "attempt harassment" of a witness. The harassment charge was based on Rodriguez's contact with a witness who was an alleged victim in a previous case of aggravated criminal sexual assault brought against Rodriguez. Rodriguez had already been acquitted of the assault charge prior to the witness testifying in this case.

After conviction, Rodriguez appealed to the Illinois Appellate Court on four issues: (1) that the convictions violated the double jeopardy clause; (2) that the indictment was defective under Illinois law; (3) that the evidence failed to prove guilt beyond a

reasonable doubt; and, (4) that prosecutorial misconduct deprived Rodriguez of due process. In an unpublished order, the state appellate court affirmed Rodriguez's conviction. *People v. Rodriguez*, 284 Ill. App.3d 1134, 237 Ill.Dec. 242, 708 N.E.2d 1282 (Ill.App.Ct.1996), Rule 23 Order at 14. In his petition for leave to appeal to the Illinois Supreme Court, Rodriguez presented only two of the four issues—double jeopardy and defective indictment.[1] The Illinois Supreme Court denied the petition for leave to appeal, *People v. Rodriguez*, 172 Ill.2d 563, 223 Ill.Dec. 199, 679 N.E.2d 384 (Ill.1997) (table), and the United States Supreme Court denied Rodriguez's subsequent petition for a writ of certiorari. *Rodriguez v. Illinois*, 522 U.S. 898, 118 S.Ct. 245, 139 L.Ed.2d 175 (1997).

On December 30, 1997, Rodriguez filed his petition for a writ of habeas corpus presenting the four issues he had raised with the Illinois Appellate Court, with the exception that the defective indictment issue was argued as a Sixth Amendment violation. The district court held that Rodriguez had procedurally defaulted the claim of a defective indictment because Rodriguez had challenged the indictment only on state law grounds in the state courts. On the second issue of double jeopardy, the district court found that the state appellate court holding that there was no double jeopardy violation was not contrary to nor did it involve an unreasonable application of clearly established federal law. As to the third issue, the court agreed with the state appellate court's conclusion that with the evidence viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. The district court determined that this finding was within the standard established by the

---

1. Rodriguez's petition to the Illinois Supreme Court included a heading of Failure to Prove Any Offense At All in his Points Relied Upon For Reversal. While this could be interpreted to encompass the issue of failure to prove guilt beyond a reasonable doubt, Rodriguez failed to present an argument on this issue in his petition.

Supreme Court and was not an unreasonable application of that standard. On the fourth issue, the district court found that the appellate court's holding that the prosecutor's comments did not deny Rodriguez a fair trial was a reasonable application of established federal law. On April 23, 1998, the district court issued an order denying the writ and dismissing the case. The district court declined to issue a certificate of appealability.

Rodriguez filed an application for a certificate of appealability with this court. On October 5, 1998, under 28 U.S.C. § 2253(c)(2), which requires a substantial showing of the denial of a constitutional right to allow for habeas review, we granted a certificate of appealability on one issue; that is, whether the prosecutor's comments during closing argument, stating that he believed Rodriguez was guilty of a prior aggravated sexual assault charge for which he had been acquitted, denied Rodriguez's due process right to a fair trial.

## II. ANALYSIS

On appeal, Rodriguez raises four issues.[2] Only one of the issues, that the convictions violated the double jeopardy clause, was presented to the Illinois Supreme Court. The second issue, that of defective indictment, was presented to the Illinois Supreme Court but argued on other grounds; that is, that the indictment was defective under Illinois law. The other two issues, that the evidence failed to prove guilt beyond a reasonable doubt and that prosecutorial misconduct deprived Rodriguez of

due process, were not presented to the Illinois Supreme Court.[3]

Rodriguez's petition for habeas review was filed on December 30, 1997. Any habeas petition filed after April 24, 1996, is reviewed pursuant to the regulations of the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). As amended by AEDPA, 28 U.S.C. § 2254(b)(1)(A) authorizes the issuance of a writ of habeas corpus only if the petitioner has exhausted all available state remedies. *See also O'Sullivan v. Boerckel*, —— U.S. ——, ——, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999). To meet the exhaustion requirement, an applicant must have raised all of his claims during the course of the state proceedings, presenting each claim fully and fairly to the state courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir.1992). A petitioner presents his claims fully "by pursuing all available avenues of relief provided by the state before turning to the federal courts." *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998). Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted. *Id.* at 277, 92 S.Ct. 509.

**2.** We agree with the Illinois Appellate Court that Rodriguez's arguments are "disordered, redundant, and confusing." For the most part, all of the reviewing courts, from state to federal, have had to extrapolate the core arguments from Rodriguez's briefs.

**3.** There is no indication in the record explaining why Rodriguez did not present these three claims. In the interest of judicial expediency, we note that the failure of counsel in postconviction proceedings to raise issues does not constitute cause for default of those issues.

28 U.S.C. § 2254(i); *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir.1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 756–57, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)), *cert. denied* —— U.S. ——, 119 S.Ct. 450, 142 L.Ed.2d 404 (1998). Therefore, barring an "external, objective factor," *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546, any attempt by Rodriguez to appeal based on ineffective assistance of counsel for not raising these three issues before the Illinois Supreme Court would fail.

■ If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted. *Boerckel*, 526 U.S. at ——, 119 S.Ct. at 1734. Boerckel raised more than six issues in his appeal to the Illinois Appellate Court. *Id.* at ——, 119 S.Ct. at 1730. In his petition for leave to appeal to the Illinois Supreme Court, he raised only three of those issues. *Id.* Boerckel's amended habeas petition under 28 U.S.C. § 2254 raised the same six claims presented to the Illinois Appellate Court. *Id.* at ——, 119 S.Ct. at 1731. The district court found that Boerckel had procedurally defaulted on three of the six issues because they had not been included in his petition for leave to appeal to the Illinois Supreme Court. *Id.* Although Boerckel attempted to present evidence that the defaults fell within the "fundamental miscarriage of justice" exception to the procedural default rule, *see Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the district court concluded that Boerckel had not satisfied the established standards to overcome the procedural bar. *Boerckel*, 526 U.S. at ——, 119 S.Ct. at 1731. This court reversed the district court's decision, finding that Boerckel had not procedurally defaulted on those issues not presented before the Illinois Supreme Court. *Id.* However, the Supreme Court reversed this court on that issue. *Id.* at ——, 119 S.Ct. at 1734. Therefore, under *Boerckel*, the three issues Rodriguez did not present before the Illinois Supreme Court are procedurally barred.

■ Federal courts may only review defaulted claims if the petition shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure. *See Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Absent such a showing, a defaulted claim is reviewable only if refusal to consider it would result in a "fundamental miscarriage of justice," that is, where "a constitutional violation has

probably resulted in the conviction of one who is actually innocent. . . ." *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (internal quotations and citations omitted); *see also Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Rodriguez has made no showing of cause for his failure to exhaust. However, he has argued constitutional violations as to each issue. Therefore, we need only determine whether our refusal to reach the merits might work a fundamental injustice. *See Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir.1999).

A. Defective Indictment

■ Rodriguez argued in the state courts that the indictment was defective under Illinois law. In his petition to the Illinois Appellate Court, Rodriguez did not cite any pertinent federal cases or state cases applying constitutional analysis, nor did he assert the claim in constitutional terms or allege facts within the mainstream of constitutional litigation. *See Verdin*, 972 F.2d at 1473–74. He now argues that the defective indictment violated his Sixth Amendment rights. By changing the basis of his argument between the state courts and the federal court, Rodriguez did not "fairly present" the question of whether the defective indictment violated his constitutional rights. *See Picard*, 404 U.S. at 275, 92 S.Ct. 509; *Howard*, 185 F.3d at 725; *see also Moment–El v. DeTella*, 118 F.3d 535, 540 (7th Cir.1997). As noted in *Picard*, "The claim that an indictment is invalid is not the substantial equivalent of a claim that it results in an unconstitutional discrimination." 404 U.S. at 278, 92 S.Ct. 509 (citations omitted). Rodriguez has failed to show any fundamental injustice would occur by procedurally barring this issue. We also note this claim is without merit

because the indictment, as read, sufficiently informed Rodriguez of the charges against him.

## B. Evidence Failed to Prove Guilt Beyond a Reasonable Doubt

■ Rodriguez argues that the state failed to prove beyond a reasonable doubt that he made an unauthorized entry into a residence and that he attempted to harass a witness. He states that "not anyone has seen defendant in that house," and that the identifying witness, a daughter of Rodriguez's ex-wife, "made nonsensical suggestions that she identified two of the defendant's incidental physical attributes; voice and body type." The witness made identification based on height, build, and voice. Rodriguez also discounts the fact that the witness stated that the intruder was wearing a dark jacket and pants, a dark knit ski mask, and dark gloves. Within an hour after the complaint was first received, the police arrived at Rodriguez's house to investigate, based on the witness's belief that he was the intruder. They found Rodriguez partially hidden under a car (a fact which he denied at trial) wearing a dark jacket and pants. They also found a dark blue ski mask and black gloves inside Rodriguez's home, both of which were still damp. (It had been raining most of that night.) He also makes much of the fact that there was no forced entry. However, Rodriguez, who had previously lived at the residence, was still a record owner of that property at that time.

Rodriguez's basic argument is that, given his interpretation of the facts, "the conclusion is inescapable that whatever transpired ... defendant was not a party to it." We agree with the state appellate court's holding that, taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and it is not more likely than not that no reasonable juror would have convicted Rodriguez. *See Schlup*, 513 U.S. at 329, 115 S.Ct. 851. Therefore, there is no risk of a fundamental miscarriage of justice in finding that Rodriguez should have presented this claim to the state court of last resort.

## C. Prosecutorial Misconduct

Although this issue is barred under *Boerckel* and we must vacate the certificate of appealability, nevertheless, we review the issue to determine if there is a fundamental injustice exception. Rodriguez asserts both plain error and constitutional violations of prosecutorial misconduct. Because both types may provide grounds for a fundamental miscarriage of justice, we. review both in determining whether either type created an exception to the procedural default of this issue.

### 1. Plain Error

■ Where counsel does not object to the prosecutor's statements, we review the remarks only to determine whether they constitute plain error. Fed.R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under the plain error doctrine, "we must search for an actual miscarriage of justice, which implies the conviction of one who but for the error would have been acquitted." *United States v. Garner*, 837 F.2d 1404, 1424 (7th Cir.1987) (internal quotations and citations omitted); *see United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). "A reviewing court cannot properly evaluate a case [for plain error] except by viewing such a claim against the entire record." *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

Rodriguez argues that the prosecutor's comments during his opening statement were prejudicial:

The evidence will show that a little girl named A[ ]S[ ] came to this courtroom in December, 1994. The evidence will show that this was the second worst day of her life. You will learn that she sat in

that witness chair and told 12 people she did not know that the defendant did something bad to her. She told about the worst day of her life. You will learn that her testimony accuses this defendant of sexually molesting her, specifically that he committed the offense of aggravated criminal sexual assault to her or against her. Defense made no objection to these comments.

A prosecutor is free to invite the jury to draw inferences from the evidence to be presented to the jury. *See United States v. Spivey*, 859 F.2d 461, 464 (7th Cir.1988); *see also United States v. Robinson*, 8 F.3d 398, 416 n. 23 (7th Cir. 1993). While the prosecutor's opening statements regarding A.S.'s testimony as to the "worst day of her life" may overly-emphasize the prior sexual molestation charge, it is very clear from the record that the jury knew Rodriguez had been acquitted of that charge. Here, the prosecutor was inviting the jury to infer that there would be sufficient evidence to show that Rodriguez had a motive to attempt to harass this witness. We cannot say, given all of the evidence at trial, that the opening statement comments were plain error.

Rodriguez also maintains that statements made by the prosecutor during closing argument were improper. The prosecutor stated that the two police officers who testified were experts with over twenty years police experience and that the jury should "believe these people" that "this crime happened," and that "these officers clearly proved this crime happened." The prosecutor also stated that A.S. was "still afraid of what the defendant did," and that her witness testimony "triggered up her recall of that scene." The prosecutor commented that, "Defendant is not contesting that A[ ]S[ ] sat across from him and accused him in her little words of aggravated criminal sexual assault. The defense is not contesting that this little girl was brave enough to accuse him of the unspeakable." The prosecutor later stated

that A.S.'s mother, Rodriguez's ex-wife, had "decided that any doings with this defendant just was [sic] not feasible, that he had done the unspeakable." The prosecutor also commented, "In sum the evidence tell [sic] you this: This defendant sat in that chair and listened to a little girl accuse him of the unspeakable and he hated her for it." Defense did not object to any of these statements.

As to the remarks about the police officers, "The government is free to draw any reasonable inference from the evidence adduced at trial and may also comment on the credibility of a witness, including the defendant." *Spivey*, 859 F.2d at 466. While a prosecutor is not permitted to express or imply his personal opinion concerning a witness's truthfulness, *Robinson*, 8 F.3d at 415 (citations omitted), the prosecutor's remarks about the police officers did not constitute improper vouching but were within the bounds of acceptable argument. *See id.* When viewed against the record as a whole, and taken in context with his explanation of the officers' background and their abilities in gathering evidence, the prosecutor's comment directing the jury to "believe these [officers] that [the] crime happened," does not rise to the necessary level of prejudice. While some of the other statements were undoubtedly inflammatory, *i.e.*, that Rodriguez was accused of the "unspeakable" and that his ex-wife believed he had done the "unspeakable," these remarks were not opinions on the merits of the case, but were "reasonable inferences to be drawn from the evidence presented." *Id.* We do not find that these improper remarks were sufficiently prejudicial to warrant reversal of Rodriguez's conviction. There is no fundamental miscarriage of justice in finding that Rodriguez defaulted on this issue when he failed to present it to the Illinois Supreme Court.

## 2. Constitutional Violation

During rebuttal summation, the prosecutor stated:

Let's look at the third major premises [sic] put to you by the defense in their case. They told you that the defendant was *found not guilty of the past crime. That's true. Now let's assume for a second that he didn't do that.* This makes my case even more powerful. Let's assume that he never sexually assaulted [A.S.]. Specifically-well, I don't believe that's what happened, but let's assume-if you want to look at my case in the worst light, let's assume that he is right, that the defendant was unjustly accused. Again I deny that is true.

Defense counsel objected to these comments.

■■■ Where a prosecutor's comments during closing argument have been objected to at trial, we must "determine whether those remarks were so prejudicial as to deprive the defendant of a fair trial." *United States v. Fakhoury*, 819 F.2d 1415, 1422 (7th Cir.1987) (citation omitted). "To decide whether a prosecutor's comments have deprived a defendant of a fair trial, we first look at the disputed remarks in isolation to determine if they are proper." *United States v. Brisk*, 171 F.3d 514, 524 (7th Cir.1999) (citations omitted), *cert. denied*, ■■■ U.S. ■■■, 120 S.Ct. 150, ■■■ L.Ed.2d ■■■ (1999). Although the prosecutor stated that Rodriguez had been acquitted of the charge and placed his comments in the context of a hypothetical, we believe that the prosecutor's comments were inappropriate in asking the jury to assume that Rodriguez was guilty of a previous charge for which he had already been acquitted. The prosecutor improperly asked the jury to speculate outside the parameters of the law.

If the remarks are found to be improper, we must consider the remarks in light of the entire record. *Brisk*, 171 F.3d at 524; *see also United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) ("it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional viola-

tions") (citations omitted). After reviewing the remarks within the context of the entire record, we then determine whether the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *see also United States v. Dominguez*, 835 F.2d 694, 699 (7th Cir.1987). It must be determined whether the error was harmless beyond a reasonable doubt. *Hasting*, 461 U.S. at 510, 103 S.Ct. 1974 ("Supervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since ... the conviction would have been obtained notwithstanding the asserted error."). This determination is made "taking into account the reality of the human fallibility of the participants, there can be no such things as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *Id.* at 508–09, 103 S.Ct. 1974 (citations omitted).

We find that the comments, placed in a qualifying context, were not sufficiently outrageous to affect the outcome of the trial given the totality of the evidence. Rodriguez did not sufficiently demonstrate that the remarks so unfairly prejudiced him that he was denied a fair trial. We find that the comments did not prejudice the jury's ability to weigh the evidence fairly. *See Dominguez*, 835 F.2d at 700. There was no constitutional violation to create an exception to procedural default.

### D. Double Jeopardy

■■■ The certificate of appeal issued by this court was limited to the prosecutorial misconduct claim. Normally, an appeal is limited to the issues certified in the certificate of appealability. *See* 28 U.S.C. § 2253(c)(3). However, we may add issues to the certificate if it is deemed necessary. *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir.1999). In order to address the only issue which met the exhaustion requirement for habeas review and eliminate

any future successive appeals in this case, we will construe Rodriguez's brief as a request for a certificate of appealability on the issue of double jeopardy. *See Williams v. Parke*, 133 F.3d 971, 975 (7th Cir.1997). However, for an issue to be added to the certificate of appealability, there must be a substantial showing of the denial of a constitutional right. *Id.*

 The double jeopardy clause states that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Constitution amend. V. The rule applied to determine double jeopardy is "whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (citation omitted). The Illinois Appellate Court, relying in part on *Blockburger*, held that the charges of attempt harassment of a witness and aggravated criminal sexual assault were not the same offense, as the elements of the two offenses are different. The court noted that "reference to a previous crime for which defendant was acquitted does not invoke the double jeopardy clause." *People v. Rodriguez*, No. 2-96-0521, 284 Ill.App.3d 1134, 237 Ill.Dec. 242, 708 N.E.2d 1282 (Ill.App.Ct. Nov. 19, 1996), Rule 23 Order at 8.

Within the double jeopardy issue, Rodriguez also argued collateral estoppel at both the state appellate and habeas proceedings. The Illinois Appellate Court noted that collateral estoppel means that once an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The court found that Rodriguez's acquittal of aggravated criminal sexual assault did not resolve the charge of attempt harassment of a witness.

Rodriguez failed to rebut the state courts' presumptively correct findings with clear and convincing evidence. *Williams*, 133 F.3d at 973. It is clear that the charges for aggravated sexual assault and attempt harassment of a witness contain separate and distinct elements. He is unable to show that he was tried twice for the same offense. Because Rodriguez failed to show a denial of a constitutional right, we must deny his implicit request for a certificate of appealability on this issue. *Id.* at 975.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Rodriguez's petition for a writ of habeas corpus.